Good morning, Justice Slade, Justice Gould, and Justice Goodwin. In this case, we move from riding two horses to the law of salvage. I'm going to speak first to the heart of the voluntariness issue, whether or not these services were rendered voluntarily, and hopefully clarify that issue. The district court judge relied upon two findings of fact in concluding that these services were rendered voluntarily. They're both contained in finding of fact number eight, which is a long finding of fact. The first was the judge found that the plaintiffs were under no official or legal duty in performing the work, and the court noted that in making that determination, the court notes that the work performed was outside the normal scope of their employment. And that certainly is the focus here, whether or not that's true. I submit that based upon the facts at trial, that is clearly erroneous and is actually a bit of a fallacy. It was undisputed at trial that Crowley Marine Services, who for shorthand I will refer to as Crowley from here on out, markets itself as a salvage company, as a member of the International Salvage Union. It has a class of tugs called a rescue class of tugs, of which this particular tug to perform the services belonged to. That particular class of tugs, as a rescue class, are equipped with rescue equipment, salvage equipment, called an emergency towing package that's specially designed to perform that work. It's undisputed that Crowley trained its personnel, including these plaintiffs, on how to use that rescue gear, the emergency tow package, and perform salvage and rescue work. And finally, it's clear on the record that Crowley regarded the scope of these men's duties, at least the IBU union members, as including salvage services because they went to the trouble to address that in the collective bargaining agreement, the IBU union contract. The second finding of fact upon which trial court relied. Before you leave that one, let me just ask this. Is there any evidence in the record at all that you think supports the finding of fact that you're challenging, that is that it was outside the scope of their duties? And if so, then how do you address that evidence? Only if you accept, and here's where I think the fallacy is, Your Honor, that because salvage services do not occur very often, it's a seldom event. There are hardly any companies in the whole world that do nothing to perform salvage services. So if you have a tug company such as Crowley with its employees such as these that are trained in salvage work, but it only comes along once a year or two, then by the definition of how infrequently it happens, do you then say that that falls outside the ordinary scope of work? Well, now, is there any evidence in the record, one way or the other, on whether Crowley has special compensation arrangements or supplemental agreements when they do have a plan, you know, salvage, and they line it up ahead of time? It does not have those special compensation arrangements, Your Honor. Is that in the record? Does the record show? No, there are no special. There's testimony that if there was a salvage that was long planned, that the workers on these boats or ships would just get paid the exact same thing for doing that work? That's correct. And particularly in this. Whose testimony is that? I'm sorry? Whose testimony? Where is that in the record? Whose testimony? I'm asking you if there's evidence in the record of this. I believe there is, Your Honor, from the Crowley manager who testified, but I think it's undisputed and the appellees' counsel would agree that there's no evidence that there is any special arrangement for additional compensation. Well, that's a little different than the question I asked. You're saying if there's no evidence of it, as opposed to there's evidence that they don't establish any. I'm not asking is there no evidence in this case as to these guys. I'm saying is there any evidence about Crowley's normal procedure when these unusual events come up where they're called upon to do a salvage and there's some planning for it, as opposed to they've got a ship out there that's in trouble and they just rush to it. I believe the only evidence would be the pay terms contained in the collective bargaining agreements, which does specify salvage as one of the types of work they would do. That would be it. Okay. Could I inquire about another matter? If the salvage vessel and the salvage or salvor were both under the same ownership, does that make a difference? For instance, if if the vessel in distress was the South Brothers tug and tow and you went out and did the salvage, there wouldn't be any argument that it was a salvage. But if they're both owned by South Brothers and one of them helps the other one, aren't they just lending a hand on their own on their own mission? Well, actually, Your Honor, I have to concede that the law is to the contrary on that. I think there is an established line of cases where companies which own the same vessel have one company assist another one, and that that does not bar the crew members from bringing a salvage claim. So I have to concede that. If their regular assignment is to go where the skipper says go and do what the skipper says do, what difference does it make if the work is happens to be rescuing another one of your company's tows? I appreciate what you're saying. And I think logically I agree with your honor. The Coast Guard only has two hurricanes a year that they get involved in. The people are trained to handle the peripheral rescue work that goes on in those cases, and that's part of their regular work, isn't it? That's right. Now, why is that different in the tug and tow and barge business? I don't think it is in this situation particularly, Your Honor, because here, and this is actually the key distinction I wanted to make in my allocated time. I think it's really the core of everything. If you look at the four cases that are relied upon by both the district court and counsel for the appellees in finding that these services are voluntarily rendered, and those cases very quickly are the Marquecas case involving Monarch Cruise Lines, where there was a passenger liner that lost power off Cuba, and another passenger liner of the same company came along and assisted, and that was found to be voluntary. The second case they rely upon is Covell versus Portland Tug and Barge, where a second mate unquestionably performed heroic acts, saving the barge for his same company again off the fair lawns by climbing a chain in monstrous oceans. The third case is Sabonis out of the Southern District of New York,  and an owner of the same company dispatched another boat to go assist and offload the grain. And finally, the fourth case, and the last case that's relied upon, is the Smith versus Union Oil case, which is Judge Beek's case. And in that case, the crew of the tug Leslie Foss assisted a vessel that was loose off of anchorage by hopping aboard and dropping some anchors. If you read all four of those cases, in none of them, Your Honor, and I think this goes to the issue you're raising, in none of them was that particular vessel classified as a rescue class vessel. In none of those cases had the company marketed itself to the world as performing salvage and rescue services with that identical vessel, that class. In none of those cases were those vessels equipped with emergency tow, rescue, or salvage gears, such as we have in this case. In none of those cases were the crew to any of those vessels trained how to use that gear and how to do emergency tow work. And in none of those cases, five reasons were the crew, such as the IBU union members, did they have in their union contract reference to doing salvage work. I would be more impressed with that argument if the record showed testimony about what the compensation was to people who did salvage work when it was planned in advance. Because it seems to me that what the district court was having trouble with was that these crewmen who were on this ship don't normally, although the contract covers salvage as something they might be called on to do at some time, they don't normally do that. And I guess I'm feeling a little bit the same way, that that's the reality of it. I'm surprised that Crowley wouldn't put in some evidence if it did other salvages and handled it on these contracts the same way. So I'm somewhat skeptical. But I'll review the record later. I just wanted to flag one issue on which I hope you'll get to at some point during your argument. And, of course, you know, there are many issues in this case. Yes. The case can turn around 180 degrees or 360 degrees. There may be no right to salvage or a full right to salvage or a part right to salvage, depending on what we decide. The issue that's of concern to me, assuming that I reject your position that there's no right to salvage and I feel there is a right to salvage, it seems to me there's some pretty good precedent that the owner of a ship that's used to make the salvage gets some return for that. And here, as I understood, the district court rejected that. I don't fully understand how the district court rejected that, because the ship is at risk and the capital of the owner is involved in that. So I'm inclined to think there's an error, and I'm going to ask the appellees to address that. What I'd like you to address is if there was an error in not giving a share of the salvage value to the ship, then what would be the percentage that would be customary and usual or that you would urge Crowley's entitled to as its share because its assets were used to accomplish the salvage? Well, you turned directly to the next issue I was going to address, so I appreciate that, and I will be brief since you've asked the appellees to address that issue more fully. I do believe that that is the subject where there's the clearest error in the case based upon established salvage law, and the line of cases reason that the owner almost invariably receives the largest percentage of the salvage award because they have the largest investment and the largest risk with all the equipment that they dedicated, the investment and everything else. And here in particular, it would, if anything, I think, deserve fairly a premium on top of that, the reason being that if you find that these services were voluntarily rendered, we still go back to those same facts that those men would have not been there unless Crowley had ordered them to be there. These were not opportunists who saw a vessel in distress and went voluntarily in. They didn't roll out on their own robo to salvage. And Crowley had trained and provided them with the gear, with all the specialized gear, whereas in almost every other salvage case where you see a percentage awarded to the owner, you don't have those facts where the owner had committed that much more in expense, training and equipment. You've read in the brief, Your Honor, that typically a vessel owner is awarded in the range of 50 percent of an award, and I would think in this case, under these facts, a premium on top of that in the range of 75 percent would be appropriate. And by the way, there is that one case, the Second Circuit Elk Ridge case cited on page 27 of our opening brief, where the vessel owner was awarded precisely that 75 percent on less appealing facts. Is there any evidence about the relationship between Crowley and the owner of the tow? And why Crowley didn't seek salvage against the owner of the tow? The only evidence on that, Your Honor, was that Crowley, and this is a 100 percent sincere answer, Crowley management viewed this as being a rescue operation within the ordinary course of their duties. They did not regard this as being salvage at all. And the evidence is they just billed their client Unocal for the regular towage transportation services and made no claim to their own underwriters for any salvage claim because they never thought it was salvage. And they were caught quite a bit by surprise when they were served with this lawsuit. That's the state of the evidence. You have a little over five minutes left. I don't know whether you want to save some time for rebuttal, but you may wish to hold back some time for that. I do, Your Honor. I just for one more minute would like to speak to the allocation and fashioning the award issue. Sure. The great, great strength of salvage law in terms of all the cases, virtually all the cases, is that everybody on board the vessel shares in the award. I believe another clear error that the district court omitted was in omitting the captain and Eric Purser and the cook from sharing in that award, which should be carved out of percentage-wise the total award of five percent. All the cases are completely 100 percent in line with that. Then the second step that becomes critical, again, to fall in line with established salvage law, is that as to those people or entities that do not bring a claim, such as here you have the owner, Crowley, the captain did not bring a claim, the cook did not bring a claim, and Eric Purser, who happened to be on board but substantially assisted with the effort to make it successful, all of them did not bring claims. The law is crystal clear, going back to the Blackwell, the founding father of salvage law, that those claims that are not brought are nearer to the benefit of the salved vessel and are deducted from the five percent. In other words, if Crowley were awarded 75 percent, that would be deducted from the five percent, as would the other individuals, to arrive upon a net award for the plaintiffs. And the law is very clear on that. Well, if Crowley were awarded 75 percent, who would the award run against? Who would pay it? Nobody would pay it, Your Honor. It's just deducted out. That's the way it is. Isn't it like, I mean, here Crowley's in two roles. One is the owner of the salvaged vessel, and second is the owner of the salvaged tug. That's right. And so basically you'd say for the rights of the salvaging group, Crowley is the owner of that, has a share of that, so it's a deduct from what Crowley is, the salvagee or whatever. Precisely. And wearing a second hat as the owner of the salvaged vessel. And the case law that supports that, Your Honor, is not only the Blackwall, but the Weissmuller v. U.S. case in the Southern District of New York and the Dyes case, D-I-Z-E case, which we cited in our brief. You've got three minutes now. Thank you, Your Honor. It may be helpful if you can do some of those. Very good. Okay. Well, we will now hear from Mr. Craft. May it please the Court. Concerning the issue of voluntariness, Judge Gould asked what evidence supported Judge McGovern's finding that this was outside the normal scope of employment. The evidence is as follows. Number one, the Crowley job descriptions, which are set out for each of the positions that the plaintiffs held, make no mention of salvage work. Number two, Plaintiffs Bartholomew, Burchick, and Christovich. Bartholomew had been with Crowley a very short time. Christovich had been with Crowley for seven years. Burchick had been with Crowley since 1988. They had never once performed any type of salvage operation. Only Haycock, who had been there since 1992, had on one occasion in 1996 participated in a salvage operation. So these many years that these crew members had worked for Crowley, there was only one crew member who had been involved in one salvage operation. The training that these people had received dealt with assisting oil tankers having problems outside of the Valdez locale, which is far different from rescuing a tug and barge out on the open seas. Number four, the making up of the tug sea voyager to the tug sea vixen was done in unprotected waters. And the evidence is clear from this case that you don't handle gear, towing gear, in unprotected waters. It was always done in protected waters for safety reasons. Number five, emergency conditions existed with regard to this salvage. Number six, it's clear that Plaintiffs Bartholomew and Christovich expressly volunteered to jump from one vessel to the next and back. And finally, the evidence is clear that had the captain ordered these two people to jump from one tug to the next, they could have refused that order because the Crowley position is that the person has the right to stay out of harm's way and they do not have to accept an order that is going to put themselves in danger. There is no dispute that Crowley's dispatch of the sea voyager to do this rescue was voluntary on Crowley's part. It had no official or legal duty to dispatch the tug to go out and get the sea vixen and the barge. There was substantial evidence in the record to support the district court's finding that the work performed by the plaintiffs was outside the normal course of their employment. And based on the clearly erroneous standard, that finding should be affirmed. Mr. Craft, let me – I'm just speaking as one of the judges on the panel. I have no idea how other panel members will view this because, as you know, we don't pre-confer on the merits. But I believe that this issue of voluntariness is extremely fact-intensive and I'm very disinclined to say that Judge McGovern's ruling is clearly erroneous. So I think there's an entitlement to salvage. But what bothers me about Kelly's case is that I look at the precedent and it seems to me to make very clear, at least as I've read it, that the owner of the vessel is entitled to a share of a salvage award. And it doesn't matter if their motivation is to do something heroic or just their financial motivation. It seems to me under the precedent they have an entitlement. And that seems to make practical common sense because, as I said, these crew members didn't row out in their own rowboat to save the tug. They used a Crawley ship and that ship was at risk and the capital was at risk. So it seems to me both precedent and logic that Crawley gets a share of the salvage award against the other Crawley vessel and thereby gets that offset. So if that's incorrect, what's the precedent that you argue and how do you answer this other precedent that's made an impression on me? I do have an answer to that. The precedent is U.S. Dominator Inc. versus factory ship Robert Reesock, which Judge Goodwin sat on that panel, and San Francisco Bar Pilots versus the vessel Peacock at 733 F Second 680. And in each of those cases, the Ninth Circuit stated, quote, an appellate court generally speaking is, generally speaking, loath to change the salvage award unless it appears to be based on incorrect principles or upon a misapprehension of the facts or whether it is so grossly excessive or inadequate as to be deemed an abuse of discretion. Now, what the. How does that answer the precedent that says the owner of the vessel that does the salvage gets a share? Do you have a precedent that says that the owner of the vessel that does the salvage does not get a share? No, and there are many, many cases which allow the owner of a vessel a share of the award. I'm aware of that. What I'm asking, though, is a little different. I mean, is there any case that you can cite to us that says when a vessel is used to make a salvage, that the owner of the vessel is to get nothing? No, there's no case that says that. But I think that the rule is, is that the award in a salvage case is left to the wide discretion of the district court. Discretion, right. But if there's an error of law, that's by itself an abuse of discretion. Well, I know that from my research, and I've done quite a bit of research over the last two and a half years on this case of salvage law, in the 200 years that this country has been deciding salvage cases, I could find not a single case that said that the district court is required to apportion a share of the award to the vessel owner. And what the appellant is asking this panel to do is to, for the first time in American legal history, to have a court enter a rule that the district judge is required to apportion or make an allocation of the award to the vessel owner. Okay. Well, I, for one, would vote for that rule. I mean, I guess I'm just being candid so you have a chance to argue it and answer it to me and to recruit the other judges to your side against it. But, I mean, if the salvaging vessel had crashed into the other vessel and sunk or had been damaged while they were salvaging, isn't the owner is out that? I mean, his capital or, I mean, the company's resources are being used to make the salvage. So how could it be proper that there would be no return for that? Well, I think that Judge McGovern, having heard all the evidence, was able and should be able to make the determination that Crowley's motivation for sending the Sea Voyager on this rescue was to save its own property. So that's clearly what he based his decision on, that, you know, he salvages. We pay a salvage to encourage people to do these heroic rescues and they get a reward. But as for the owner's share, it doesn't seem to turn on heroism on the fact that it's the owner's equipment that's at risk. Well, but they were they were putting whatever equipment was at risk at risk to save their own equipment. What we're talking about in other salvage cases is where you have two separate entities. So the salvo and the vessel being salved. And you have the owner of the salving vessel putting its its equipment at risk to go out and save the property of another where they have no legal obligation to do that here. And in and the purpose of the salvage award is to induce people to put their property at risk to go out and and save equipment that is on the seas and at risk. What we've got here is a different situation where Crowley's property was already at risk when when the sea vixen caught on fire. So its property is already at risk. So there would be no reason to enter an award inducing them to put their property at risk because they already had the motivation to put their property at risk. And the purpose of the salvage award, and it's clear through Supreme Court cases back to the 19th century, is that the purpose of the award is to induce people to put their own property and their own lives at risk to go out to save another person's property. And that purpose would not be served in this case by requiring the court as a matter of law to to allocate a portion of the award to to Crowley. OK, well, that's a fair argument. And if it's unprecedented, we'll have to decide. But let's assume for a minute that the panel decides that the owner of the salvaging vessel has to get some share. What would be the position of appellees? And assuming that the panel ruled against you on that issue, cases seem to suggest share up to 75 percent, often 50 percent. I suppose in some cases less than 50 percent. Under the circumstances, what would be the appropriate share? I think under the circumstances, the appropriate remedy would be to remand the case to Judge McGovern, who heard all of the evidence in the case and let Judge McGovern make the determination of what share Crowley should get. It would be up to him. We wouldn't the appellate court wouldn't try to establish a share for the vessel owner if it determined that such a share was proper. Well, let me just read you from the Connemara, which is an 1883 Supreme Court case. It said the services performed being salvage services. The amount of salvage to be awarded is largely a matter of fact and discretion, which cannot be reduced to precise rules, but depends upon a consideration of all the circumstances of each case. And with all due respect, this panel did not hear the evidence in the case, did not see the witnesses. And it's not in a position to determine what the proper allocation to Crowley should be if that's what is done. Thank you. That answers my question. With regard to the cook and to Mr. Purser, there was a finding of fact that the cook played no role in in this salvage. And that was supported by the evidence. There was testimony that the cook played no role in the salvage salvage. And the doctor case is holding it. All the members of the crew at the South or crew would share if they unless they waive it. Well, I'd like to refer you to the St. Paul Marine Transport Corp versus zero sales corp at five or five second one one one five, which is a Ninth Circuit case and states, quote, all who render service in a salvage operation may share in an award. So in order to also serve who just fry the potatoes and feed the crew, I mean, they're all they're all part of the ship's company. Go out there. They're all at risk. Well, in this case, the only evidence that the cook played any part in this, in this salvage operation was she made sandwiches for Mr. Christovich and Mr. Bartholomew to carry over to the other vessel. And I believe that Judge McGovern, in his discretion, could determine that that was not the type of service that that required an allocation of award. And again, the St. Paul case says that they may share an award. Again, there's no holding by this court or any other court that I'm aware of, at least, that says that the district court is required as a matter of law to make an allocation to every member on the crew, whether they they participated or not. With regard to Mr. Purser. Now, let me ask you one question about St. Paul's at all. Is it also correct that the salvage in that case took a couple of days so that whatever the cook was doing was being done while the salvage operation was ongoing? I believe that's the case. And how long did this salvage operation take here? About 55 minutes in terms of the jumping over and securing it from the time they they jumped over to the time all the gear was was put away and they had it in tow. It took approximately 55 minutes. Was there any finding on waiver by the drug court? There was a finding of fact and a finding of law that the language of the contract. Let me just speak to that for a moment. The language of the contract states that whenever the tug or those acting on its behalf waive the right to claim salvage, such waiver shall be construed as a waiver made on behalf of the crew and shall be binding upon all of its members. So the contract language requires a waiver to be taken by Crowley in order to bind the members. There was there was no contract language that automatically waives the right to claim salvage. And the finding of fact made by Judge McGovern was that there was no evidence that a waiver had been made by Crowley in this case. And there was a total absence of evidence of a waiver in this case. There's not a single piece of evidence of waiver that came forward in this case. Who would have the burden to go forward with evidence of waiver? The defense would. Let me get back to Mr. Persher, please. Mr. Persher's primary activity with regard to this salvage operation was the creation of a document which documented the timing of the events and what what specifically occurred. The creation of that document played no role in assisting with the rescue of the civics and the barge Alaska. The one thing he did on deck was he came down and assisted the engineer Haycock in removing a thimble that was caught on the quarter bits at the rail. And the testimony in the case was that that took a couple of minutes. Now, again, Judge McGovern, in his discretion, can look at the weight of the activities taken on by the members of the crew. And I just want to summarize for you, Mr. Haycock, who was the engineer who was on deck the entire time of the entire 55 minutes, he was handling the lines and the gear on deck while Mr. Bartholomew and Mr. Christovich were on the other vessel. He cleared the thimble when it became caught and was attempting to clear the thimble when Mr. Persher came down to assist. He worked on the aft deck, paying out the tow wire after the Vixen and the Sea Voyager were were connected. He was on deck doing all of the work. His allocation in this salvage was ten thousand dollars. Mr. Purser, if he's entitled to an allocation, it would have been an insignificant amount, given the percentage of what he did compared with the out the time and the work which Mr. Haycock did. And we believe that Judge McGovern was entitled to make no award or no allocation to Mr. Purser under these circumstances. And the appellant claims that there was no finding with regard to Mr. Purser. And I don't believe a district court is required to state a negative in the finding. There was simply no allocation made because Judge McGovern rightly felt that his work was not significant enough to make an allocation in this case. Now, again, in conclusion, there is no authority in 200 years of salvage law standing for the proposition that a vessel owner or a people serving on the vessel are required as a matter of law to get an allocation in a salvage award. Such a rule, if entered, would be inconsistent with the widely accepted rule that the amount and allocation of a salvage award is strictly within the wide discretion of the trial court. And such a rule, if laid down by this Court, would put district courts in the position of limiting their discretion in how to fashion an award based on the evidence that they hear in a case. Could I ask you to address one more issue? Yes, sir. The master's share. The district court gave an award to the master even though he didn't claim it? That's correct. Correct. Why should that award have gone to the master as opposed to just having been an allocation to the master's share, but viewing it as waived, it would go back to the benefit of Crowley? Because the master took part in the salvage. He navigated the vessel and allowed the vessels to be connected and allowed the two to jump from one vessel to the next. But if he doesn't make a claim... Well, the law of salvage is clear that whether you make a claim or not, if you participate and assist in the salvage, you can be given a portion of the award. And the judge, after hearing the evidence in this case, determined that this master did skillfully navigate the vessel and did determine or was entitled to be allocated a portion of the award. Now, the master got nothing from it, but that amount of the award was deducted from the plaintiff's share. It wasn't paid to the master? Correct. I think my time is up. We would just ask that the district court be affirmed on this case. Thank you. Thank you for a very fine argument. Now, you did reserve some time, three minutes, so that's what we've got. I don't even think I'll need all my time, Your Honor. Addressing the last question and the last point you raised, there's an, I believe, unbroken line of salvage cases that says when claimants that would otherwise be entitled to salvage do not make the claim, that does inure to the benefit of the salved vessel. And that starts all the way again back with the Blackwell and the Bureau case and the Dice case I mentioned earlier. I don't believe there's any law to the contrary of that. As far as what Mr. Craft addressed on the issue as to whether all boards should be entitled to share, even the Cook, again, we have, I believe, an unbroken line of cases going back to the Blackwell that Mr. Craft and the appellees are inviting this court to depart from, which I think would be inappropriate. And finally, Your Honor, I believe that a remand to Judge McGovern would not be necessary and that this court could very correctly and properly set the percentages that would be fair. My reason for that is that we have really here an undisputed record. There's no dispute on this record about the facts that occurred, what people did and the roles everybody played, the equipment that was used, the amount of time it took. Well, admiralty law still wisely leaves that to the trial judge to make that distribution. We don't have any skill or expertise in that area that the trial judge does. And it would be unusual, wouldn't it, for a court of appeals to engage in 5 percent to you, 10 percent to you, 15 percent to you, and so on. I don't know if it would be unusual and undisputed facts, but I certainly defer to Your Honors in terms of what the appropriate remedy is in your discretion. All right. Thank you very much. Thank you very much. We appreciate the excellent argument on both sides. The case will be submitted.
judges: Lay , Goodwin, Gould